UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **STARTLEY GENERAL CONTRACTORS, INC., et al.,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**THE WATER WORKS BOARD OF THE CITY OF BIRMINGHAM, et al.,**<br><br>    **Defendants.** | Case No.: 2:18-cv-00543-MHH |

# ORDER

The plaintiffs have asked the Court to reconsider its order dismissing their federal claim under the False Claims Act and remanding their state law claims. (Docs. 53, 54). Alternatively, the plaintiffs ask for permission to amend their complaint to re-allege their claim under the FCA. (Doc. 54).[1] For the reasons discussed below, the Court conditionally grants the plaintiffs' motion as to their request to amend their complaint.

---

[1] In their first amended complaint, the plaintiffs asserted two federal claims: a claim under the Sarbanes-Oxley Act and a claim under the False Claims Act. (Doc. 42, Counts 21 and 22). The Court dismissed both federal claims. The plaintiffs do not challenge the dismissal of their claim under the Sarbanes-Oxley Act.

1

I. **STANDARD OF REVIEW**

"In the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy and is employed sparingly." *Wallace v. Holder*, 846 F. Supp. 2d 1245, 1248 (N.D. Ala. 2012).  A motion to reconsider "cannot be used to relitigate old matters, raise [new] argument or present evidence that could have been raised prior to the entry of judgment." *Hasanti v. Sec'y, Fla. Dep't of Corr.*, 729 Fed. Appx. 912, 913 (11th Cir. 2018) (quoting *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010)) (alterations in original omitted).  "The only grounds for granting" a motion to reconsider "'are newly-discovered evidence or manifest errors of law or fact.'"  *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999)).

II. **BACKGROUND**

Plaintiffs Startley General Contractors, Inc. and Mandy Powrzanas allege that the Birmingham Water Works Board used a "pay to play" strategy when awarding contracts to contractors.  (Doc. 42, pp. 1-3).  In addition to asserting a variety of state law claims against seven defendants, Startley and Ms. Powrzanas allege that the defendants violated the False Claims Act.  (Doc. 42, ¶¶ 249-54).  In support of their claim under the FCA, the plaintiffs assert that the "BWWB, Underwood, S. Jones, Lowe, Newton, R. Jones and Jones Utility caused or ignored

fraudulent billing, inflated prices for services rendered, using position for personal gain, and receiving kickbacks (such as but not limited to: illegal overtime, false billing, abuse of authority) in the 'Pay to Play' scheme of the BWWB." (Doc. 42, ¶ 249). The plaintiffs also allege that the BWWB "is an Alabama public corporation incorporated pursuant to Ala. Code §11-50-230" and that the BWWB "receives part of its funding for projects under bonds from the federal-state program the Drinking Water State Revolving Fund ("DWSRF") loan fund." (Doc. 42, ¶¶ 14, 15).

The Drinking Water State Revolving Fund Loan Program is a federal assistance program that helps states "achieve the health protection objectives" of the federal Safe Drinking Water Act. *See* "How the Drinking Water State Revolving Fund Works," United States Environmental Protection Agency, https://www.epa.gov/drinkingwatersrf/how-drinking-water-state-revolving-fund-works#tab-1 (last visited March 18, 2019). Congress appropriates funds for the Drinking Water State Revolving Fund, and the Environmental Protection Agency administers the fund. "Each of the 50 states and Puerto Rico operates its own DWSRF program." *Id.* The EPA awards "capitalization grants"

to each state for their "drinking water infrastructure needs." States provide a twenty-percent match of the capitalization grant. *Id.*[2]

Pursuant to an Operating Agreement that the EPA made with the Alabama Department of Environmental Management in 1998, ADEM manages and disburses DWSRF funds that the state receives from the EPA. "DWSRF Intended Use Plan," http://adem.alabama.gov/programs/water/srfreports/2018DWSRFIUP.pdf (last visited March 18, 2019) (explaining that the EPA "award[s] capitalization grants to the States, which in turn administer the DWSRF program"). "Alabama's DWSRF is designed to be a perpetual source of low cost financial assistance for the construction of public water supply facilities needed to meet compliance standards and public health requirements." *Id.* Alabama's DWSRF funds consist of the funds that ADEM receives from the EPA, direct loan repayments and interest on those repayments, and state matching funds. *Id.* ADEM's annual Intended Use Plan "describes how the State intends to use available DWSRF program funds for the year to meet the objectives of the [Safe Drinking Water Act] and further the goal of protecting public health." *Id.*

Each year, ADEM selects local drinking water projects that it will assist. Eligible projects may receive from Alabama's DWSRF Fund "loans for up to 100 percent of allowable project costs for the construction of water treatment and

---

[2] None of this information appears in the plaintiffs' first amended complaint. The Court takes judicial notice of this information from the EPA's website.

distribution facilities." *Id.*  ADEM "may offer a range of options regarding the term, interest rate and level of loan funding." *Id.*  A local treatment facility that requests a loan from Alabama's DWSRF Fund must execute a financial agreement with ADEM.  *Id.*[3]  "An ability to repay must be substantiated along with meeting other specified standards."   http://www.adem.state.al.us/programs/water/srf.cnt (last visited March 20, 2019).  Municipalities benefit from these loans because a revolving fund loan "offers a loan interest rate substantially lower than the prevailing municipal bond rate available to 'AAA' rated municipalities." *Id.*

Thus, if the BWWB receives a loan of DWSRF funds for a construction project, it presumably does so pursuant to an agreement with ADEM, and BWWB must repay DWSRF loans to ADEM.  The funds that ADEM uses for the loans for BWWB projects include funds appropriated by Congress to the DWSRF loan program.  The plaintiffs contend that pursuant to a bribery scheme, BWWB allowed Jones Utility "to invoice for work not done or equipment no used."  (Doc. 42, ¶ 21).  By way of example, the plaintiffs assert that in January of 2015, "Jones Utility was given a special project, Graymont Ave," under a 2015 "On-Call contract," and "BWWB's engineer, Derrick Maye ("Maye"), conspired with R. Jones to fraudulently invoice for the work and they would share the additional monies over and above the actual amounts due. Maye stated the BWWB projected

---

[3] None of this information appears in the plaintiffs' first amended complaint.  The Court takes judicial notice of this information from ADEM's website.

this project to cost more due to the rock in the area, making the rock excuse how the fraud was camouflaged." (Doc. 42, ¶¶ 31, 32, 38). In four other paragraphs of their first amended complaint, the plaintiffs allege generally that the defendants submitted fraudulent invoices. (Doc. 42, ¶¶ 52, 188, 194, 249). Significantly, in their first amended complaint, the plaintiffs have not alleged that the BWWB projects on which Jones Utility purportedly submitted false invoices were funded with DWSRF loans from ADEM.

The Court dismissed the plaintiffs' FCA claim because the plaintiffs have not alleged a false claim that the defendants purportedly made to the United States government. (Doc. 52, p. 4). The Court also determined that allowing the plaintiffs to amend their complaint would be futile because the plaintiffs cannot identify a false claim that the defendants allegedly submitted to the federal government. (Doc. 53, p. 5).

In their motion to reconsider, the plaintiffs assert that "Powrzanas having worked for defendants Jones Utility and Richard Jones for approximately 20 years, is an insider with firsthand knowledge of the fraudulent scheme between the defendants of the BWWB and Jones Utility involving billing practices, underbidding, bribery, kickbacks, and other fraudulent activities used to abuse and waste government funds used by the BWWB." (Doc. 54, p. 19). The plaintiffs also submit that "Powrzanas has firsthand knowledge of how BWWB obtains

government money through the State Revolving Fund and uses those funds to finance its projects." (Doc. 54, p. 21). Finally, the plaintiffs argue that "Powrzanas can provide specific examples and instances in which Jones Utility fraudulently billed the Birmingham Water Works ("BWWB") and was paid with funds from the various bonds that the BWWB has through the SRF (State Revolving Fund) or the DWSRF (Drinking Water State Revolving Fund)." (Doc. 54, p. 24). On this record, the Court considers the plaintiffs' motion for reconsideration.

## III. DISCUSSION

The plaintiffs allege that the "pay for play" scheme used by BWWB members and Jones Utility to reward contracts violates the False Claims Act. (Doc. 42, pp. 54-55).[4] For more than 150 years, the FCA has been the federal government's primary tool for combatting fraud perpetuated against it. 31 U.S.C. §§ 3729-3733; *see also* S. Rep. No. 345, at 34 (1986) *reprinted in* 1986 U.S.C.C.A.N. 5266, 5399. Congress enacted the statute in 1863 to address "massive frauds" by government contractors during the Civil War. *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016).

---

[4] The plaintiffs have not explained whether they assert the their FCA claim under § 3729(a)(1)(A) or § 3729(a)(1)(B) or both. (*See* Doc. 42). Section 3729(a)(1)(A) concerns an alleged presentation of a false claim to obtain federal funds, and § 3729(a)(1)(B) concerns the alleged creation or use of a false record or statement concerning federal funds.

In 2009, Congress enacted the Fraud Enforcement and Recovery Act, which amended and renumbered the FCA. Pub. L. No. 111-21, 123 Stat. 1617 (2009). FERA provides that FCA liability attaches not only to claims presented directly to the United States but also to claims presented to entities administering government funds. 31 U.S.C. § 3729(a)(1)(B). Additionally, FERA redefines "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

In their motion to reconsider, the plaintiffs argue that under the FERA amendments to the FCA, they may assert a colorable FCA claim without alleging that the defendants submitted a false claim to the federal government. The plaintiffs are correct. But to allege an FCA claim based on alleged fraudulent invoicing of the BWWB for BWWB projects, the plaintiffs, consistent with Rule 11, must identify BWWB projects funded with DWSRF loans for which Jones Utility purportedly submitted fraudulent invoices or otherwise violated the FCA. The allegations in the plaintiffs' first amended complaint fall short of the mark.

In deciding whether to file a second amended complaint, the plaintiffs must be mindful that "even if the relator is an insider who alleges awareness of general billing practices, an accusation of '[u]nderlying improper practices alone [is]

insufficient … absent allegations that a specific fraudulent claim was in fact submitted to the government" or to an entity administering federal funds. *Carrel v. AIDS Healthcare Found., Inc.*, 898 F.3d 1267, 1275 (11th Cir. 2018) (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1013 (11th Cir. 2005)). The relator must "allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions." *Corsello*, 428 F.3d at 1014. The first amended complaint contains allegations concerning two specific projects under the 2015 "On-Call" contract: Belleview and Mt. Olive Rd. (*See* Doc. 42, ¶¶ 51, 58, 61). To be able to assert a potentially viable FCA claim, at a minimum, consistent with Rules 8, 9, and 11, the plaintiffs must plausibly and in good faith allege that the BWWB funded those specific projects or the "On-Call" contract with a DWSRF loan or loans.[5] Although the plaintiffs do not have to identify the precise date or amount of every purported fraudulent invoice to provide the defendants adequate notice of the alleged theory of fraud, the plaintiffs must identify projects for which the BWWB received DWSRF funds and tie those funds to the alleged fraudulent invoices.[6] If the

---

[5] The plaintiffs attached to their motion to reconsider a "list of BWWB's current outstanding bonds." (Doc. 54, p. 24 (emphasis omitted); *see also* Doc. 54, p. 29 (listing four DWSRF-DL bonds)). Again, it is not enough to allege that BWWB receives DWSRF funds for water projects. The plaintiffs must allege that BWWB funded the projects for which Jones Utility purportedly submitted improperly inflated invoices with DWSRF loan proceeds.

[6] The Court leaves for another day the question of whether the BWWB's obligation to repay (with interest) to ADEM all of the money that the BWWB receives from Alabama's DWSRF loan fund impacts the viability of an FCA claim. In other words, while there may be a fraudulent *use* of federal funds for a period of time, there would not appear to be a fraudulent *retention* of

plaintiffs can fulfill their obligations under Rules 8, 9, and 11, then the plaintiffs may file a second amended complaint.[7]

In considering whether to permit another amendment of the complaint in this matter, the Court must determine whether an amendment would be futile. The defendants moved to dismiss the plaintiffs' initial complaint because the plaintiffs did not provide adequate pre-suit notice of their FCA claim to the United States, and the plaintiffs did not file their complaint under seal. (Doc. 48, pp. 21-23). If the defendants' arguments are well-taken, then a second amendment of the complaint in this matter would be futile.

Under the FCA, a *qui tam* relator must comply with statutory prerequisites. 31 U.S.C. § 3730(b). The FCA provides:

---

federal funds. If anyone is defrauded in this scenario, it may be BWWB customers who ultimately foot the bill for BWWB construction projects.

[7] In support of their motion to reconsider, the plaintiffs state that they "were given a short window of time to amend their first complaint." (Doc. 54, p. 26). The plaintiffs omit the fact that the Court initially expedited the proceedings in this matter because the plaintiffs requested a temporary restraining order and a preliminary injunction. (*See*, *e.g*,. Doc. 9).

In addition, in support of their motion to reconsider, the plaintiffs argue that the Court erred when it relied on *U.S. ex rel. Clausen v. Lab Corp. of Am.* (Doc. 54, pp. 5-8). While FERA has altered the FCA, each element of an FCA claim still must meet the pleading standard in Rule 9(b). *See Jallali v. Sun Healthcare Grp.*, 667 Fed. Appx. 745 (11th Cir. 2016) (relying on *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1309 (11th Cir. 2002)). Post-FERA, if a relator fails to allege with particularity that the defendant submitted false claims or other false information to the government or to an entity administering government funds, then dismissal of an FCA claim is proper. *United States v. HPC Healthcare, Inc.*, 723 Fed. Appx. 783, 789 (11th Cir. 2018) (citing to *Clausen*), *cert. denied sub nom U.S. ex rel. Chase v. Chapters Health Sys., Inc.*, 139 S. Ct. 69 (2018). *Clausen*'s "indicia of reliability" standard remains binding precedent in the Eleventh Circuit Court of Appeals.

> **(b) Actions by Private persons – (1)** A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.  The action shall be brought in the name of the Government.  The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.
>
> **(2)** A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4[i] of the Federal Rules of Civil Procedure.  The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.  The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(1)-(2).[8]   The notification requirement "allow[s] the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already

---

[8] Rule 4(i) of the Federal Rules of Civil Procedure provides:

**(i) Serving the United States and Its Agencies, Corporations, Officers, or Employees.**

**(1) United States.**  To serve the United States, a party must:

**(A)(i)** deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

**(ii)** send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

**(B)** send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

**(C)** if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

11

investigating and whether it is in the Government's interest to intervene and take over the action." *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998-99 (2d Cir. 1995) (quoting S. Rep. No. 345, 99th Cong., 2d Sess. 23-24, *reprinted in* 1986 U.S.C.C.A.N. 5266, 5289). "A secondary objective was to prevent defendants from having to answer complaints without knowing whether the government or relators would pursue the litigation." *Pilon*, 60 F.3d at 999.

If the government declines to intervene pursuant to 31 U.S.C. § 3730(b) and the district court unseals the *qui tam* case, then 31 U.S.C. § 3730(c)(3) governs subsequent proceedings. That statute provides:

> If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense). When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

31 U.S.C. § 3730(c)(3).

The plaintiffs did not comply with 31 U.S.C. § 3730(b). The plaintiffs filed this action in the Circuit Court of Jefferson County, Alabama. (Doc. 1-1, p. 3). The plaintiffs did not bring their FCA claim in the name of the United States government, and the plaintiffs did not file their complaint *in camera*. (Doc. 1-1). The plaintiffs allege that they "fulfilled their procedural obligations by stating their complaints and giving written disclosures to Deen Abbott of the Federal Bureau of

Investigation on February 2, 2017 and to the upper management of the BWWB requesting an investigation and corrective action." (Doc. 42, p. 55, ¶ 250).

In *State Farm Fire and Cas. Co. v. U.S. ex rel. Rigsby*, the United States Supreme Court held that a district court does not have to dismiss an FCA action when a plaintiff violates § 3730(b)(2). 137 S. Ct. 436, 442-43 (2016). In *Rigsby*, the plaintiffs' attorney and plaintiffs themselves disclosed the complaint's existence to the media and others while the complaint was under seal. 137 S. Ct. at 441. The Supreme Court explained that mandatory dismissal of an FCA claim following a seal violation would not further the purpose of § 3730(b)(2), which is to encourage private enforcement suits while allowing the Government to protect its interests in pending federal criminal investigations. *Rigsby*, 137 S. Ct. at 443 (citing S. Rep. No. 99-345, pp. 23-24 (1986)). The Supreme Court stated that "even if every seal violation does not mandate dismissal, that sanction remains a possible form of relief." *Rigsby*, 137 S. Ct. at 444.

The Supreme Court noted that three factors "appear to be appropriate" when a court must decide whether to dismiss an FCA claim for a seal violation: (1) harm to the Government, (2) severity of the violations, and (3) evidence of bad faith on the part of the individual who violated § 3730(b). *Rigsby*, 137 S. Ct. at 441-42; *see also United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245-47 (9th Cir. 1995).

13

Here, the Court has little information regarding the potential harm to the Government. The plaintiffs contend that they "stat[ed] their complaints and g[ave] written disclosures" to an FBI agent in 2017. (Doc. 42, p. 55, ¶ 250). The Court does not know and cannot learn how the FBI agent responded to the plaintiffs' allegations; FBI investigations are confidential. The defendants have not submitted evidence that suggests that the United States has been harmed by the plaintiffs' violation of § 3730(b). Without information from the Government, the Court may not speculate about whether the plaintiffs' failure has undermined the primary purpose of the seal requirement.

The second factor the district court must consider, the severity of the violation, weighs in favor of dismissal. As noted above, the plaintiffs did not file their complaint *in camera* and did not serve their complaint on the Government accompanied by a written disclosure of information. *Cf. Meyn v. Citywide Mortg. Assocs., Inc.*, No. 16-2492-CM, 2016 WL 7336415, at *1 (D. Kan. Dec. 19, 2016) (dismissing the plaintiff's claim for failure to comply with all of § 3730(b)'s statutory requirements). Therefore, the plaintiffs' violations are significant.

But the Court does not find that the violations were intentional. The plaintiffs' multiple pleading deficiencies in this matter seem to stem from a lack of familiarity with the FCA as opposed to a willful disregard of the statute's provisions. Thus, the Court does not find that the plaintiffs acted willfully or in

bad faith. Plaintiffs' counsel filed this action in state court and seems to have believed that his notification to the FBI was sufficient. Plaintiffs' counsel explained: "And look at the plain language of the act which says the information shall be served on the government, and so it doesn't necessarily say it has to be the Department of Justice…." (Doc. 52, p. 6). At this point, the Court is not inclined to find that his oversight was willful.

The Court also considers the fact that the fraudulent conduct alleged, if proven and if adequate to support an FCA claim, would represent a significant abuse of federal funding. The absence of pre-suit notice should not preclude the United States from participating in an investigation of the potential misuse of federal funds at this early stage of the litigation if the United States wishes to do so. Therefore, if the plaintiffs decide to amend their complaint to re-allege their FCA claim, then the plaintiffs must serve their second amended complaint on the United States.

## IV. CONCLUSION

For the reasons discussed above, the Court conditionally grants the plaintiffs' motion to reconsider. If the plaintiffs can comply with Rules 8, 9, and 11, they may amend their complaint. On or before April 3, 2019, the plaintiffs must either file and serve their second amended complaint or they must file a

notice withdrawing their motion to reconsider so that they may proceed with their state law claims in state court.

    **DONE** and **ORDERED** this March 20, 2019.

                                          */s/ Madeline H. Haikala*
                                      **MADELINE HUGHES HAIKALA**
                                      UNITED STATES DISTRICT JUDGE